UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIDNEY GRITZ

                Plaintiff,

v.                                                          No. 06-cv-_____

THE DISTRICT OF COLUMBIA

                Defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PLAINTIFF'S MOTIONS FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

      Plaintiff has moved for a temporary restraining order and preliminary and permanent injunctions prohibiting defendant District of Columbia from conducting an autopsy of the remains of Ms. Cynthia Gritz and directing the District of Columbia to return Ms. Gritz's remains forthwith to the Hines-Rinaldi Funeral Home in Silver Spring, Maryland, so that she may be buried promptly and intact, in accordance with traditional Jewish beliefs and practices.

      We show in this memorandum that these motions satisfy each of the requirements for temporary and permanent injunctive relief: that plaintiff is likely to succeed on the merits, that he will suffer irreparable injury if the defendant is not enjoined that the defendant will not suffer substantial harm if the requested relief is issued, and that the public interest favors granting the requested relief.

## STATEMENT

This lawsuit seeks to prevent the District of Columbia from performing an unnecessary autopsy on the body of Cynthia Gritz, when such an autopsy would be a serious violation of her family's religious beliefs and practices. The material facts are set out in plaintiff's Verified Complaint:

Plaintiff Sidney Gritz is an adult resident of Maryland and is the brother and guardian of the deceased Cynthia Gritz. Verified Complaint ¶ 3.

The deceased had severe mental retardation, and was committed to the custody and care of the District of Columbia in or about 1960, when she was seven years old. She spent many years as a resident of Forest Haven, the District's institution for developmentally disabled persons. In recent years, she has been a resident of private care facilities. Verified Complaint ¶ 5.

About two years ago Ms. Gritz was diagnosed with cancer of the colon. More recently her cancer metastasized to her liver. After a short hospitalization, she was transferred to a hospice, where she died on August 24, 2006. There is no doubt that the cause of her death was cancer. Ordinarily, the D.C. Medical Examiner would not seek to perform an autopsy on a person who died under circumstances such as this. Verified Complaint ¶ 6. A copy of Ms. Gritz's death certificate, stating the cause of death as "colon cancer," is filed herewith.

Ms. Gritz and her family are Jewish. Her family adheres to traditional Jewish beliefs and practices regarding autopsies and burial, namely, that autopsies are prohibited and that burial must take place very promptly after death. Verified Complaint ¶ 7. *See also, e.g.,* United Synagogue of Conservative Judaism, GUIDE TO JEWISH FUNERAL PRACTICE, at < http://www.uscj.org/Guide_to_Jewish_Fune6211.html > ("The practice

of routine autopsies is contrary to Jewish law, since autopsies are viewed as a desecration of the body.").[1]

However, District of Columbia Mayor's Order 2004-76 requires the D.C. Medical Examiner to "conduct autopsies upon the human remains of persons with mental retardation and developmental disabilities who receive services and support from the Mental Retardation and Developmental Disability Administration." 51 D.C. Register 5278 (May 13, 2004).[2] At the time of her death, Ms. Gritz was a person with mental retardation and developmental disabilities who received services and support from the D.C. Mental Retardation and Developmental Disability Administration. Verified Complaint ¶ 8. The Mayor's Order further requires that such autopsies be performed "within 48 hours of receipt of the remains or as soon thereafter as practicable." Pursuant to a demand by the Medical Examiner's office, Ms. Gritz's body was transferred from a Jewish funeral home to the Medical Examiner's office yesterday; the Medical Examiner will perform an autopsy on her remains unless enjoined. Verified Complaint ¶ 9.

Performing an autopsy on Ms. Gritz's body, or delaying her burial, will constitute a serious and irreparable violation of her family's, and plaintiff's, religious beliefs and practices. Verified Complaint ¶ 10.

---

[1] The traditional Jewish prohibition on autopsies has often been recognized by the courts. *See, e.g., Atkins v. Medical Examiner of Westchester County*, 418 N.Y.S.2d 839 (Sup. Ct. 1979) (enjoining autopsy that would violate the deceased's Jewish faith); *Weberman v. Zugibe,* 394 N.Y.S.2d 371 (Sup. Ct. 1997) (same); *Rotholz v. City of New York*, 582 N.Y.S. 2d 366 (Sup. Ct. 1992) (hospital may be liable for performing autopsy on Jewish deceased); *Liberman v. Riverside Memorial Chapel, Inc*., 650 N.Y.S.2d 194 (App. Div. 1996) (upholding award of punitive damages against funeral home that instigated autopsy on Jewish decedent contrary to principles of her faith); *Schwartz v. State*, 616 N.Y.S.2d 921 (Ct. Cl. 1994) (upholding damage award to family of Jewish decedent autopsied contrary to his faith).

[2] A copy of Mayor's Order 2004-76 is filed herewith.

**ARGUMENT**

**I. Plaintiff Is Likely to Succeed on the Merits.**

Plaintiff's claim arises under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.,* commonly known as "RFRA."[3] As pertinent here, RFRA provides that:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except [that] …
>
> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmenal interest.

42 U.S.C. § 2000bb-1(a) and (b).[4] RFRA also provides that

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

42 U.S.C. § 2000bb-1(c). Thus, as the Supreme Court recently explained in *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 126 S. Ct. 1211 (2006), once a person shows that a government action substantially burdens his exercise of religion, the government, not the plaintiff, bears the burden—even at the preliminary injunction stage—of demonstrating that the burden is the least restrictive means of furthering a compelling governmental interest. *Id*. at 1219-20 (affirming a preliminary injunction

---

[3] The complete text of RFRA is filed herewith.

[4] While RFRA has been held unconstitutional as applied to the states, *City of Boerne v. Flores,* 521 U.S. 507 (1997), it remains applicable to federal entities, *Holy Land Foundation v. Ashcroft,* 333 F.3d 156, 167 (D.C. Cir. 2003), including the District of Columbia government, *see Potter v. District of Columbia*, 382 F.Supp.2d 35, 36 n.1 (D.D.C. 2005) (Robertson, J.).

against enforcement of the Controlled Substances Act against an Indian tribe's use of a sacramental drug where the evidence as to whether the government could carry its burden was in equipoise).

The evidence that an autopsy of Ms. Gritz would substantially burden plaintiff's exercise of religion is clear and hardly subject to dispute. Thus, to carry *its* burden here, the District of Columbia would have to demonstrate (1) that it has a compelling interest in performing the autopsy, and (2) that performing an autopsy on Ms. Gritz is the least restrictive means of furthering that compelling interest.

It may be that the District of Columbia has a compelling interest in determining the cause of death of persons with mental retardation and developmental disabilities who die in the District's care. But that interest does not require that an autopsy be performed in every case; no autopsy is necessary to determine the cause of death of a person who dies in a hospice after losing a battle with metastatic cancer. The District therefore cannot show that performing an autopsy on Ms. Gritz is the least restrictive means of furthering its compelling interest. Under RFRA, it is clear that a general governmental interest, no matter how compelling, does not justify the application of a government regulation to an individual unless the application *to that person* is compellingly justified. Where it is not justified, the person is entitled to a religious exception. *Gonzales v. O Centro Espirita*, 126 S. Ct. at 1222 ("RFRA, however, plainly contemplates that *courts* would recognize exceptions—that is how the law works.") (emphasis in original). The plaintiff here is entitled to such an exception.

Indeed, the precise subject of prohibiting the government from requiring autopsies over religious objections was prominently before Congress when it considered RFRA. As the Supreme Court has noted, "[m]uch of the [congressional] discussion centered upon anecdotal evidence of autopsies performed on Jewish individuals and Hmong immigrants in violation of their religious beliefs." *City of Boerne v. Flores*, 521 U.S. 507, 530-31 (1997) (citations omitted). The Senate Report on the RFRA bill, in its discussion of the need for the law, focused on this very problem:

> By lowering the level of constitutional protection for religious practices, the decision [in *Employment Division v. Smith*, 494 U.S. 872 (1990)] has created a climate in which the free exercise of religion is jeopardized.[13] At the committee's hearings, the Rev. Oliver S. Thomas, appearing on behalf of the Baptist Joint Committee on Public Affairs and the American Jewish Committee, testified: 'Since *Smith* was decided, governments throughout the U.S. have run roughshod over religious conviction. Churches have been zoned even out of commercial areas. *Jews have been subjected to autopsies in violation of their families' faith*. . . . In time, every religion in America will suffer.'"

---

[1]*See, e.g., You Vang Yang v. Sturner*, 750 F. Supp. 558 (D.R.I. 1990) (reversing earlier decision upholding Hmong religious objection to autopsy, in light of Smith) ….

S. Rep. No. 103-111 (103rd Cong., 1st Sess.), "Religious Freedom Restoration Act of 1993," at 8 (emphasis added; ellipsis in text in original). Subsequent courts have applied the congressional intent. *See United States v. Hammer*, 121 F.Supp.2d 794, 802 (M.D. Pa. 2000) (enjoining post-execution autopsy of death row inmate who had sincere religious objection).

Plaintiff's likelihood of prevailing on the merits is so clear that not only preliminary but permanent relief is appropriate.

## II. Plaintiff will Suffer Irreparable Injury if the Defendant is Not Enjoined.

The irreparable nature of plaintiff's injury is incontestable. An autopsy once performed cannot be undone. The desecration of the body (in plaintiff's religious belief) cannot be repaired.

## III. The Defendant will Not Suffer Substantial Harm If the Requested Relief is Issued.

The District of Columbia will not be harmed by the absence of an autopsy in this case. Ms. Gritz's cause of death is known, and it is known that it did not result from any fault of the District's. A RFRA-based injunction in this case will not undermine the application of Mayor's Order 2004-76 to other cases, where autopsies may serve a necessary purpose. *See, e.g., Snyder v. Holy Cross Hospital,* 352 A.2d 334, 341-42 (Md. Ct. Spec. App. 1976) (upholding state's compelling interest in performing autopsy on young orthodox Jewish man, who died suddenly while in apparent good health); *Kickapoo Traditional Tribe of Texas v. Chacon*, 46 F.Supp.2d 644 (W.D. Tex. 1999) (overriding native American tribe's objection to autopsy where cause of death was unknown).

## IV. The Public Interest Favors Granting Relief.

In enacting the Religious Freedom Restoration Act, Congress declared it to be the public policy of the United States that "governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000bb(a)(3). Within constitutional limits, Congress is entitled to declare the public policy of the District of Columbia. U.S. CONSTITUTION, Art. 1 § 8 ("The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District"). This Court should honor and effectuate that declared public policy.

### V. A Permanent Injunction is Appropriate.

Temporary or preliminary relief in this case would be both illusory and inadequate. If an autopsy is to be performed it should be performed promptly; delaying the autopsy (or prolonging the litigation to decide that question) would itself cause irreparable harm to the plaintiff by preventing the prompt burial required by Jewish belief and practice. *See* Verified Complaint ¶ 7 ("burial must take place very promptly after death"); *see also* United Synagogue of Conservative Judaism, GUIDE TO JEWISH FUNERAL PRACTICE, *supra* ("Jewish law requires that burial take place as soon as possible, preferably within 24 hours of death."). The Court should reach and decide the merits at this time.

### CONCLUSION

For the reasons given above, plaintiff's application for a temporary restraining order and his motions for preliminary and permanent injunctions should be granted without delay. Proposed orders are filed herewith.

> Respectfully submitted,
>
> */s/ Arthur B. Spitzer*
> _____
> Arthur B. Spitzer
>   D.C. Bar No. 235960
> American Civil Liberties Union
>   of the National Capital Area
> 1400 20th Street, N.W., Suite 119
> Washington, D.C. 20036
> (202) 457-0800

August 25, 2006